# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MARY-ANN PLITT, | ) | CASE NO. 1:18CV1876 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| ORION AUSTINBURG, LLC., ET AL. | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motion for Summary Judgment of Defendants Orion Austinburg, LLC., David Adamczyk and Jeff Duffala. (ECF # 21). For the following reasons, the Court grants, in part, and denies, in part, Defendants' Motion.

## Background Facts

Plaintiff Mary-Ann Plitt ("Plitt") was employed by Defendant Orion Austinburg, LLC. ("Orion"), at the Austinburg Nursing Home and Rehabilitation Center, a 140-bed skilled nursing and assisted living facility located in Ashtabula, Ohio and owned by Atrium Living Centers, Inc. Plitt began her employment on February 14, 2010, as Therapy Program Manager. At the time she was hired, Plitt was 59 years old. Defendant Jeff Duffala ("Duffala") was a therapy manager at a different Atrium Living Center location when Plitt was hired. During the course of Plitt's employment with Orion, Duffala became an area manager of Orion and Plitt's direct supervisor. Defendant David Adamczyk (Adamczyk") was Duffala's supervisor during Plitt's employment with Orion. Adamczyk was responsible

for hiring Plitt. Both Duffala and Adamczyk are significantly younger than Plitt.

Orion provides therapy to its residents using Physical Therapists ("PTs"), Physical Therapy Assistants ("PTAs"), Occupational Therapists ("OTs") and Occupational Therapy Assistants ("OTAs"). Orion bills various entities for these services including Medicare and Medicaid. Therapists must have active, valid licenses to practice in order to provide therapy services to Orion patients and Orion cannot bill for services provided by one of its therapists if they do not have a current, valid license. Licenses must be renewed every two years.

As Therapy Program Manager, Plitt reported to three individuals. Lillian Sharp was Orion's Administrator, responsible for overseeing all operations in the facility at the time of Plitt's termination. Jeff Duffala was the Area Therapy Manager, responsible for overseeing the therapy departments. David Adamczyk was Regional Director of Therapy, responsible for operational and financial results of the therapy departments and was Duffala's supervisor. David Heller, while not a direct supervisor of Plitt's, was Director of Operations of multiple Atrium facilities, including Orion.

As Therapy Program Manager at Orion, Plitt managed the day-to-day operations of the therapy department and was the liaison between the therapy staff and Adamczyk. Plitt supervised the staff, ensured quality of care, implemented discipline, evaluated staff, ensured correct work hours, directed team meetings and, of particular importance here, ensured ethical behavior of the Rehabilitation Department. (See Ex. A ECF #21-1). In addition to these duties, Plitt continued to provide patient care as a licensed PTA.

In 2017, a PTA in Plitt's department, Brian Riffe, allowed his license to lapse, yet continued to perform therapy services for Orion patients for two months after the lapse.

2

When he finally informed Plitt of the lapse, she sent him home and reported the matter to Sharp and Duffala (and possibly Adamczyk, though there is some dispute on this.) Adamczyk notified his supervisor Jill Cherry and she in turn notified Heller. An inquiry into the matter revealed that on January 23, 2017, Duffala had sent Plitt an email requesting verifications of the staff licenses. This was sent one week before PTA licenses expired. On February 1, 2017, Plitt responded with printouts from Ohio's Elicense website for all the therapists on the list provided by Duffala. All showed current licenses through 2019 except for Riffe's, whose license verification showed he had not renewed it. Plitt admits she did not look at the printouts closely before she sent them. Plitt further states that she knew the purpose of Duffala's verification request was to "make sure they're all current." (Plitt depo. at 214).

Duffala then mistakenly entered Riffe's license as current in Orion's system based on his belief that Plitt had verified Riffe's license as renewed and had sent Duffala only renewal verifications. After an investigation into the matter, Heller, in conjunction with Cherry and Sharp, decided to terminate Plitt due to this lapse of Riffe's license, which resulted in substantial financial loss to Orion. Plitt alleges it was not her responsibility to ensure therapy team members renewed their licenses, rather, pursuant to Orion's own written policies, responsibility falls solely on the therapist. Instead of terminating Riffe, who failed to renew his license, or Duffala, who entered the incorrect license status into the Orion database, Orion terminated Plitt alone. Neither Duffala nor Riffe were terminated, but suffered less severe discipline. Both are substantially younger than Plitt. Upon her termination, Plitt was replaced by a significantly younger employee, Cynthia Park, who was 37 years old at the

3

time. Park was an OTA who worked under Plitt's supervision. Plitt was training Park in Plitt's job duties so she could fill in for Plitt when she was absent and also to eventually replace Plitt when she retired. Park was Plitt's handpicked successor.

In October 2012, Plitt had total knee replacement surgery causing her to be off from work for six weeks. When Plitt returned to work she used a cane to assist in walking longer distances. Adamczyk sent Plitt home telling Plitt she could not return to work until she no longer required a cane and could squat down to a certain degree. Plitt alleges other employees were permitted to work with canes and squatting was not an essential job function of her therapy work because she worked primarily with high functioning patients. Plitt alleges she was able to perform all the essential functions of her job after her knee surgery.

Plitt alleges Orion perceived her as disabled and suffering from a physical impairment as a result of her knee replacement surgery and that it substantially limited one or more of her major life activities.

Plitt returned to work two weeks after being sent home by Adamczyk. Upon her return, Orion did not ask her to take an independent medical examination nor did Orion test her ability to squat. Instead, Plitt alleges she began receiving comments related to her age and disability. Both Adamczyk and Duffala questioned Plitt about her age and when she would retire. This occurred frequently on their biweekly meetings with Plitt. (Tenney Affidavit). Duffala also began to write-up Plitt. In 2017, Plitt's employment was terminated purportedly for the failure to timely discover Riffe's lapsed license. According to Plitt, both Duffala and Adamczyk participated in her termination.

Plitt's Amended Complaint alleges Age Discrimination in violation of 29 U.S.C. §

4

621, *et seq*. against Orion and Disability Discrimination in violation of O.R.C. § 4112.01 *et seq*., against all Defendants, due to her perceived disability. Plitt seeks restoration to her former position, an award of compensatory and consequential damages, punitive damages and attorney fees and costs.

**Defendants' Motion**

Defendants move for summary judgment on all Plitt's claims, contending Plitt was terminated for a legitimate non-discriminatory reason - i.e. she failed to verify the licenses of her staff, resulting in a $44,000 loss to Orion as a result.

According to Orion, Riffe worked for more than two months after his license had lapsed. Plitt had been instructed to verify the licenses of her staff just a week prior to the Riffe's license expiration but Plitt failed to discover the issue. Plitt's age and perceived disability had nothing to do with the decision to terminate her employment and Plitt can produce no evidence that her termination was the result of unlawful discrimination based on her age or perceived disability.

Plitt offers only innocuous comments inquiring about her retirement plans that evidence nothing more than Orion's succession planning and, even if they were made as Plitt alleges, these statements do not support her discrimination claims. The comments were not made by any of Administrators involved in the decision to terminate Plitt.

Furthermore, the person who replaced Plitt, while younger, was Plitt's own selected successor to Plitt's position and was not selected due to any bias in favor of younger employees.

Finally, Plitt cannot show any discrimination based on Defendants' alleged perception

that Plitt was disabled when she returned from knee replacement surgery. Plitt's employment was terminated more than four years after her knee surgery and she acknowledges her perceived disability was very short-term, roughly two weeks, and was never mentioned after she returned to work in December of 2012.

**Plitt's Opposition**

In response, Plitt notes that Orion does not contest she has made a prima facie showing of Age Discrimination under the Age Discrimination in Employment Act ("ADEA"). She further contends she has produced evidence that Orion's alleged non-discriminatory reason for her termination was mere pretext as she has shown Orion treated substantially younger employees differently and more favorably than her.

Plitt represents she can also prove that her degenerative knee condition meets the definition of disabled under Ohio law, therefore, her claim must survive summary judgment.

Lastly, Plitt contends Defendants failed to accommodate and never engaged in discussions with her to determine what accommodations she needed to perform her job after her return from surgery. In failing to do so, Defendants committed a per se violation of Ohio law and their Motion for Summary Judgment fails.

## LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323

F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>ADEA</u>**

The ADEA prohibits an employer from discharging an individual because of that individual's age. 29 U.S.C. § 623(a)(1). "The plaintiff bringing an action under the ADEA has the burden of proof to establish that the plaintiff's age was the but-for reason of his or her termination." *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012), quoting *Gross v. FBL Fin. Servs. Inc.*, 577 U.S. 167, 177 (2009). Plaintiff may prove a violation by either direct or circumstantial evidence. *Blizzard* at 283. Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. at 358, quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Where plaintiff is unable to produce direct evidence of age discrimination, the Court must follow the burden-shifting framework articulated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*. Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext. *Blizzard*, 698 F.3d at 283, quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d

603, 615 (6th Cir. 2003).

Here, Plitt cannot show discrimination by direct evidence. Plitt's only purported direct evidence of age discrimination are statements by her supervisors Adamczyk and Duffala asking her about her retirement plans. The Sixth Circuit has held "questions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination." *Lefevers v. GAF Fiberglass Corp.,* 667 F.3d 721, 724 (6th Cir. 2012). Nor has Plitt offered any evidence that the ultimate decision maker, David Heller, considered the statements made by Adamczyk or Duffala when he decided to terminate Plitt. Therefore, the Court will proceed with its analysis by considering the circumstantial evidence.

**Prima facie**

Defendants do not dispute that Plitt has provided sufficient evidence to establish a prima facie claim of age discrimination under the ADEA. "To establish a valid claim for age discrimination under the ADEA, Plaintiff must prove that: (1) she is a member of a protected class; (2) she incurred an adverse action; (3) she was qualified for the position she held; and (4) she was replaced by a person outside the protected class or a similarly-situated, non-protected employee was treated more favorably." *Minadeo v. ICI Paints*, 298 F.3d 751, 764 (6th Cir. 2005).

Plitt has shown she is a member of a protected class as she was 66 at the time of her termination and the ADEA protected class involves those "persons 40 years of age or over..." *Allen v. Highlands Hospital Corp.,* 545 F.3d 387, 394 (6th Cir. 2008). She has also undisputedly proven she suffered an adverse employment action when she was terminated. And no party disputes that Plitt was qualified for her job.

Plitt can satisfy the alternative fourth element of a prima facie showing as she was undisputedly replaced by a younger worker. Therefore, the Court finds that Plitt can prove those elements and establish a prima facie case of age discrimination.

**<u>Legitimate Non-Discriminatory Reason for Her Termination</u>**

Under *McDonnell Douglas*, the burden of production now shifts to Defendant to articulate a nondiscriminatory reason for its adverse employment action against Plaintiff. *Alberty,* 730 F. App'x. at 358. An employer is "entitled to judgment as a matter of law if the record conclusively reveals some other, nondiscriminatory reason, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). Generally, poor work performance is a legitimate and nondiscriminatory reason for discharge. *Heck v. Bd. of Trustees*, 12 F.Supp.2d 728, 740 (S.D. Ohio 1998), *accord Danielson v. Lorain*, 938 F.2d 681, 684 (6th Cir. 1991) (stating that workers who poorly perform their jobs are not insulated from dismissal simply because they are members of the protected age group).

Orion has produced sufficient evidence that Plitt failed to notice that a PTA under her supervision had let his license lapse, yet continued to treat clients for nearly two months. Consequently, Orion was unable to bill Medicare for the work, resulting in a $44,000 loss to Orion. At this stage of the proceedings, a Defendant "need only introduce sufficient admissible evidence that raises a genuine issue of fact that its proffered reason for the adverse action was based on a non-discriminatory reason." *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 814–15 (6th Cir. 2011). To meet this burden, Defendant offers the deposition

statements of David Heller, Director of Operations at Atrium, who was one of three people who made the decision to terminate Plitt. Heller attests that Administrator Sharp determined Plitt should be fired and Heller agreed because the inability to bill for over $40,000 " was egregious enough," but to Heller "the biggest key" was Plitt knew she needed to verify her employees' licenses were active. (Heller depo at 69). Heller further stated that Plitt's prior discipline played no role in the decision to terminate her and that failure to ensure her employees' licenses were valid was the sole reason for her termination. (Id.).

Thus, Defendants have met their burden to articulate a legitimate, non-discriminatory reason, for Plitt's termination.

**Pretext**

Once Plaintiff has established a prima facie case of age discrimination and Defendant has countered with a legitimate, nondiscriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to establish that Defendant's stated reason for discharge is pretextual. *Blizzard*, 698 F.3d at 285. At the pretext stage, the plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's stated reasons for termination. *Blizzard*, 698 F.3d at 285. To establish pretext, Plaintiff must show that: "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate discharge, or (3) they were insufficient to motivate discharge." *Id.*, quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (Emphasis removed). Pretext "is a commonsense inquiry: did the employer [take action against] the employee for the stated reasons or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 at n.4 (6th Cir. 2009). Courts may not second-guess the business judgment of an employer but must instead determine "whether the

employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004). "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Corell v. CSX Transp., Inc*., 378 F.App'x 496, 505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept*., 581 F.3d 383, 399 (6th Cir. 2009).

Here, Plitt makes a somewhat atypical argument, alleging disparate treatment as evidence of pretext rather than evidence to make her prima facie showing. However, the Sixth Circuit has approved the use of such evidence at the pretext stage. See *Miles* v. *South Central Human Resources Agency, Inc.,* 946 F.3d 883, 893 (6th Cir. 2020). ("Thus, our precedent from that context helps determine whether SCHRA's treatment of Swafford and Hopkins is enough evidence for a rational juror to infer that SCHRA's proffered justifications for Miles's termination were pretextual.")

Plitt argues the decision to terminate her was pretext for unlawful discrimination because Orion's written policies place the responsibility for license renewals on the therapists themselves. This is evidenced by Atrium's Therapy Policy and Procedure Manual which reads, "It is the responsibility of each licensed therapist to maintain a current license..."). The Atrium Centers' Employee Handbook, Section 3.3, also places responsibility for renewing licenses on the licensee, "If your position requires licensure or certification, it is your responsibility to acquire and maintain and provide appropriate documentation to the company..."). (See ECF # 22-9 Ex. 15, 17). Despite these clear mandates, Riffe was not terminated though it was his responsibility to ensure his license was current. Duffala also agreed that it is ultimately the responsibility of every therapist to make sure his or her license

is renewed. (Duffala depo at 80). Duffala also affirmed that there was no written policy at Orion that placed responsibility for ensuring licensing of PTAs on the Therapy Program Manager. (Id at 101).

Neither was Duffala terminated after he also failed to verify that Riffe's license had lapsed when he mistakenly entered Riffe's license expiration date as 2019 instead of 2017, despite the fact that the information provided him by Plitt indicated Riffe's license was expired. According to Plitt, it was Duffala who was responsible for verifying therapists licenses were current. (Plitt aff. at 14 and Atrium Centers Policies and Procedures). Thus, Plitt argues Riffe and Duffala had clearly established written responsibility to maintain active licenses and verify that the licenses were timely renewed while Plitt did not have such written responsibilities. Because Plitt was disciplined more severely than Riffe who was 32 at the time of the incident and Duffala who was 47 at the time, coupled with Duffala's and Adamczyk's repeated questions to Plitt regarding when she was going to retire, (*Id* at 15)(see also Tenney affidavit, ECF # 22-5), Plitt contends she has presented sufficient evidence that Defendants' stated reason for termination did not actually motivate her termination.

Orion contends Plitt was not similarly situated to Riffe and Duffala because Plitt was Riffe's supervisor and Duffala was Plitt's supervisor. The Sixth Circuit has held a "plaintiff must show that she is similar to her proposed comparator in all relevant respects." *Miles v. S. Cent. Human Res. Agency, Inc.,* 946 F.3d 883, 893 (6th Cir. 2020). The Sixth Circuit has quoted with approval cases from other circuits holding that higher level employees are not similarly situated even if they engage in the same conduct as lower level employees as they are held to higher level of professionalism. See *Miles, 946* F.3d at 894, citing the Third

Circuit Court in *Michaels v. BJ's Wholesale Club, Inc.,* 604 F. App'x 180, 181 (3d Cir. 2015) ("plaintiff failed to establish a prima facie case of retaliation even though other, lower-ranking personnel also participated in the [misconduct and the employer] decided to terminate only the most senior employees").

Having reviewed the Motion, Opposition, Reply and supporting evidence, the Court finds Plitt has presented genuine issues of fact sufficient to survive summary judgment. When using disparate punishment as evidence of pretext a plaintiff must produce "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which [defendant] contends motivated its discipline of [plaintiff]." *Miles,* 946 F.3d at 893 (6th Cir. 2020). Although Plitt is not similarly situated to Riffe and Duffala in all respects, the Sixth Circuit has cautioned that courts should not look for exact correlation but instead "must show that she is similar to her proposed comparator in all relevant respects." *Id.*

Plitt does not dispute that she failed to catch the PTA's lapsed license, but asserts that it was not her responsibility. Her supervisor, Duffala, testified on deposition that it is the responsibility of each care provider to maintain a current license.

> Q. Ultimately, it is the responsibility of every person who owns a license to make sure that it is renewed, correct?
>
> A. That is correct.

(Duffala depo. ECF # 22-9 pg. 8)

> Q. And Atrium has policies that state that it is every licensed professional's responsibility to make sure that their license is current and renewed timely,

correct?

A. Yes.

(*Id.*)

When asked what he did after Plitt informed him of Riffe's lapsed license, Duffala testified he informed his supervisor Adamczyk and then they both investigated what happened.

Q. What did you do? What did you find out?

A. Turned up an email from Mary-Ann that was supposed to contain just verifications of license renewal for assistants because they had just renewed on the 31st of January. And as we went through the attachment we found that within the attachment was Brian Riffe, who had not renewed.

(*Id* at 10-11).

Duffala admits he did not look at Riffe's renewal date, which showed his license expired in 2017. Instead, Duffala entered the date incorrectly as 2019, assuming Riffe had timely renewed his license. Duffala further admits there is no Atrium policy placing license renewal responsibility on program managers like Plitt. (*Id* at 14.)

Plitt, Riffe and Duffala did not answer to the same supervisors, Riffe answered to Plitt, who answered to Duffala, who answered to Adamczyk. Although Adamczyk did not make the final decision to terminate Plitt, Plitt has produced evidence that Heller, who did participate in the final decision in conjunction with Sharp and Cherry, relied in some measure, on information provided by Adamczyk. While there may be strong business reasons why a company may punish more severely a supervisor as opposed to someone in a lesser position

in the company for the same conduct, this does not explain why both Duffala and Riffe, who occupied positions above and below Plitt, were punished less severely arising out of the same incident.

Furthermore, there is no dispute that Orion cannot produce any document stating it was Plitt's responsibility to verify the licenses of the PTAs. However, there is a written policy and supporting testimony that the PTAs are solely responsible. Plitt also produced evidence that Duffala was responsible for verifying license renewals and it is undisputed that Plitt provided accurate information in her email to Duffala on the status of the renewals and Duffala mistakenly entered Riffe's license status as current, when in fact it was not.

Orion contends Plitt's job description expressly requires that she "ensures ethical behavior of Rehabilitation Department." (Atrim Living Centers Job Description Therapy Program Manager ECF 21-1 at para. 8.0). However, ethical behavior is not defined, and while Plitt conceded that billing for unlicensed work would be unethical, she was not alleged to have done so. Rather, she was terminated because she failed to verify Riffe had renewed his license.

The Court finds under these circumstances, and construing the evidence is favor of Plitt, that based on Plitt's disparate punishment and repeated questioning by Adamczyk and Duffala on her retirement, which a fellow employee recounted was "frequently," there is a genuine issue of fact whether Orion's stated reason for Plitt's termination actually motivated its decision. Therefore, Orion's Motion for Summary Judgment on Plitt's Age Discrimination claim is denied.

**Disability Discrimination**

According to her Complaint, Plitt alleges all Defendants perceived her as disabled and engaged in unlawful discrimination against her based on her perceived disability. Plitt had knee replacement surgery in October of 2012, requiring her to miss approximately six weeks of work. When she returned to work she required a cane to help her walk longer distances and was unable to squat down beyond a certain degree. When Adamczyk discovered Plitt was using a cane, he sent her home and told her not to return until she no longer required the cane and could squat beyond a certain degree. According to Plitt, Defendants allowed other employees to use a cane while at work and the ability to squat was not an essential job function of her position.

Plitt was able to return to work without a cane two weeks after Adamczyk sent her home. Defendants did not require she take an independent medical exam nor did they test her ability to squat. As a result of Defendants perception that Plitt was disabled, Duffala began writing Plitt up, treating her differently than other employees and ultimately terminating her and replaced her with a non-disabled person.

Defendants argue Plitt's disability discrimination claim must fail because she admits she is not disabled and admits her knee issue was a short-term issue, lasting only two to three weeks. Defendants argue that short-term impairments like the one Plitt suffered do not qualify as a disability under Ohio law. Furthermore, after she returned without her cane she experienced no further knee issues and no one commented about her perceived disability. Neither was Duffala her supervisor at the time but only became her supervisor in 2014, therefore, any write ups he gave Plitt were too remote in time to be related to her knee surgery. Lastly, Plitt offers no evidence that disability was considered in the decision to

17

terminate her and her termination occurred nearly five years after her knee surgery.

When she initially returned to work from her knee surgery, Plitt contends Defendants failed to accommodate her in violation of O.R.C. § 4112.02. Furthermore, Plittt alleges the caselaw Defendants' rely on is no longer valid in light of the 2008 amendment to the ADA, which broadened the definition of "substantially limits" to include impairments lasting less than six months. Because Plitt could work at her position while limiting patient care, which she was able to do, she was able to return to work, albeit with restrictions which she informed Defendants of prior to her return. Yet, Adamczyk sent her home without consulting HR and without engaging in the interactive process required under the law before he sent her home without pay and without accommodating her perceived disability.

Ohio state law prohibits "any employer, because of the ... disability ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Revised Code § 4112.02(A). Because Ohio's disability discrimination law parallels the ADA in all relevant respects, courts apply the same analytical framework. *Johnson v. Univ. Hosps. Physician Servs.,* 617 F. App'x 487, 490 (6th Cir. 2015). Courts apply the *McDonnell/Burdine* burden shifting paradigm to disability discrimination claims such as this where there is no direct evidence of discrimination.

A plaintiff alleging disability discrimination may demonstrate a prima facie case by showing that "(1) defendant regarded her as disabled,3 (2) she is otherwise qualified for the job, with or without reasonable accommodation, and (3) she suffered an adverse action

because of her disability. " *Johnson,* 617 F. App'x. at 490. "[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 521–22, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Under the 2008 Amendment to the ADA, the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA"), "a plaintiff proceeding under the "regarded as" prong only has to prove the existence of an impairment to be covered under the Act; she no longer is required to prove that the employer regarded her impairment as substantially limiting a major life activity." *Wells v. Cincinnati Children's Hospital Med. Ctr.* 860 F. Supp.2d 469, 478 (S.D. Ohio 2012) citing 29 C.F.R. § 1630.2(g)(3) ("the 'regarded as' prong of the definition of disability ... does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment."). "Similarly, the Ohio Civil Rights Act does not require an individual alleging that her employer regarded her as disabled to show that the employer also believed that the perceived disability limits a major life activity." *Wells,* 860 F.Supp.2d at 478.

Plitt's Amended Complaint does not allege a failure to accommodate claim but is limited strictly to disability discrimination based on Defendants' perception of Plitt as disabled for the two week period she required the use of a cane. As a result, Plitt cannot now, for the first time in opposition to Defendants' Motion for Summary Judgment, allege a failure to accommodate claim. See *Tucker v. Union Needletrades, Industrial and Textile Employees*, 407 F.3d 786, 788 (6th Cir. 2005). ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.").

Furthermore, the only adverse employment action Plitt alleges she suffered due to her alleged perceived disability was her termination, which occurred nearly five years after her knee surgery. Plitt offers no evidence that any Defendant made a discriminatory or alleged discriminatory statement regarding her perceived disability due to her knee issues. Nor does Plitt offer any evidence to support her contention that her perceived disability played any role in the decision to terminate her. Her Amended Complaint alleges Duffala began writing her up after she returned to work from her knee surgery but Duffala did not become her supervisor until 2014, almost two years after her surgery, and he made no comments that could be remotely regarded as exhibiting a discriminatory animus based on her disability.

Neither has Plitt shown that anyone perceived her as disabled following her return from leave in 2012. She never requested an accommodation after 2012. (Plitt depo. pg. 215). Thus, Plitt cannot show that Orion's decision to terminate her was the result of any disability discrimination when the most that can be demonstrated is Defendants may have failed to accommodate her disability for a two week period over four years prior to the decision to terminate her. Therefore, she fails to establish a prima facie case of disability discrimination.

Therefore, for the foregoing reasons, the Court denies Defendant Orion's Motion for Summary Judgment on Plitt's Age Discrimination claim but grants Summary Judgment for Defendants Orion, Duffala and Adamczyk on Plitt's Disability Discrimination claim under Ohio law.

IT IS SO ORDERED.

Date: March 13, 2020   /s/Christopher A. Boyko
                       CHRISTOPHER A. BOYKO
                       Senior United States District Judge